UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARQUELLA G., | |
| Plaintiff, | Case No. C20-1148-MLP |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by failing to comply with a prior court remand order, and in discounting certain medical opinions. (Dkt. # 12 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND

Plaintiff was born in 1993, has a high school diploma, and previously worked as a hotel cleaner and fast-food cashier. AR at 926. Plaintiff was last gainfully employed in 2017. *Id*. at 712, 926.

ORDER - 1

In September 2013, Plaintiff applied for benefits, alleging disability as of August 1, 2012. AR at 281-89. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 169-77, 179-85. After the ALJ conducted a hearing in February 2016 (*id*. at 35-63), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-29.

The Appeals Council denied review (AR at 753-56), but the U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for further administrative proceedings. *Id*. at 795-804. A different ALJ held a hearing on remand (*id*. at 708-52), and subsequently issued a decision finding Plaintiff not disabled. *Id*. at 682-700.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the application date.

Step two: Plaintiff has the following severe impairments: learning disorder/borderline intellectual functioning, affective disorder, and anxiety disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform full range of work at all exertional levels, with the following non-exertional limitations: she can understand, remember, and carry out simple instructions, and exercise simple workplace judgment. She can perform work that is learned on the job in less than 30 days by short demonstration and practice or repetition. She can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required. She can work in jobs that require only casual or superficial interaction or contact with the general public.

Step four: Plaintiff has no past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 682-700.

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

Plaintiff appealed this final decision of the Commissioner to this Court. (Dkt. # 4.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A.     The ALJ Erred With Respect to the Prior Court Remand Order**

The prior court remand order focused on one part of a 2012 opinion written by examining psychologist Patricia Fantoni-Salvador, Ph.D.:

> [Plaintiff] exhibit[ed] mild deficits in her SMMSE performance (26/30). She behaves immaturely with peers and figures of authority; she exhibits anxiety

> symptoms, helplessness, low motivation and marginal adaptive functioning. If properly encouraged and taught, she may develop the ability to become appropriately self-sufficient and successfully obtain and maintain unskilled to skilled employment. She exhibits good social skills, but presents naïve and vulnerable. She may require assistance in developing adequate coping skills to resolve the stressors in her life. There was slight evidence of exaggerated information by [Plaintiff]. She would benefit from counseling focused on easing her transition into the workforce and vocational counseling focused on increasing her future employment options and motivation to follow her own plans. She may also benefit from educational therapy focused on learning disorders to help resolve her anxiety issues regarding her current abilities. [Plaintiff] seems to be working at her full intellectual capacity; she is likely to need assistance to maintain it.

AR at 495-96. The prior ALJ decision gave great weight to Dr. Fantoni-Salvador's opinion, yet the reviewing court found that the ALJ's RFC assessment did not fully account for Dr. Fantoni-Salvador's opinion, which it interpreted to mean that Plaintiff was not currently able to work. *See id*. at 799-800.

On remand, the ALJ discussed Dr. Fantoni-Salvador's opinion in greater detail, and explained that although the district court had interpreted it to mean that Dr. Fantoni-Salvador believed Plaintiff was unable to work at that time, the ALJ did not agree: the ALJ emphasized that Dr. Fantoni-Salvador did not "opine that the claimant had a limitation rendering her incapable of all work activity" (AR at 694), and also found that it appears that Plaintiff "was, in fact, encouraged and taught by her family and her mental health providers" to handle her personal care independently, heed reminders, follow simple directions, work, and graduate from high school. *Id*. at 695. The ALJ also indicated that an RFC assessment does not factor in motivation problems, and his RFC assessment nonetheless permits Plaintiff to be taught how to perform a job, and thus "adequately accounts for any learning [she] may need[.]" *Id*. For these reasons, the ALJ found that Dr. Fantoni-Salvador's opinion did not describe any disabling limitations and was fully accounted for in the RFC assessment. *Id*.

ORDER - 4

Plaintiff argues that the ALJ did not comply with the court remand order because the ALJ disputed the court's interpretation of Dr. Fantoni-Salvador's opinion, even though the court was not simply "offering its advice to the ALJ, or offering to engage in a debate[.]" (Dkt. # 12 at 4.) This is a fair characterization of the ALJ's response to the court remand order. Even if the ALJ or this Court were to disagree with the prior court's interpretation of Dr. Fantoni-Salvador's opinion, the court remand order is not up for debate at this time and instead represents the law of the case. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) ("The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." (*citing Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012))).

Furthermore, it appears that much of the ALJ's reasoning explains why the ALJ could have *discounted* Dr. Fantoni-Salvador's opinion as interpreted in the court remand order, yet the ALJ stated that he gave significant weight to Dr. Fantoni-Salvador's opinion and maintained that he incorporated this opinion into the RFC assessment. Indeed, the Commissioner's brief emphasizes that because Plaintiff worked after the time of Dr. Fantoni-Salvador's evaluation, Plaintiff must have become self-sufficient after the time of the evaluation. (Dkt. # 13 at 2.) Plaintiff did work after the time of Dr. Fantoni-Salvador's opinion, but none of this work constituted substantial gainful activity and thus does not demonstrate that Plaintiff was able to "obtain and *maintain* unskilled to skilled employment" in contravention of Dr. Fantoni-Salvador's opinion. *See* AR at 495 (emphasis added).

The ALJ also found that Dr. Fantoni-Salvador's suggestion that Plaintiff would need to be "properly encouraged and taught" to become self-sufficient and work does not pertain to a "medical factor used in the finding of disability[,]" because an RFC represents the most a

ORDER - 5

1   claimant can do regardless of, *inter alia*, motivation. *Id*. (citing 20 C.F.R. § 416.945, Social
2   Security Ruling 96-8p). Although the ALJ purported to quote either/both a regulation and a
3   Social Security Ruling for the proposition that motivation is not an RFC factor, neither of these
4   authorities contains the sentence quoted nor does either identify motivation as an improper RFC
5   factor. *Id*. The Commissioner does not defend this line of the ALJ's reasoning. (Dkt. # 13 at 2.)

6   Because the ALJ purported to credit Dr. Fantoni-Salvador's opinion, and yet did not craft
7   an RFC assessment consistent with the prior court remand order's instructions, the ALJ
8   perpetuated the error identified in the prior court remand order. On remand, the ALJ shall either
9   fully credit Dr. Fantoni-Salvador's opinion in accordance with the prior court remand order and
10  find Plaintiff disabled, or shall provide legally sufficient reasons supported by substantial
11  evidence to discount the opinion.

**B.     The ALJ Did Not Err in Discounting Other Medical Opinions**

Plaintiff also assigns error to the ALJ's assessment of other medical opinions, each of
which the Court will address in turn.

*1.     Legal Standards[3]*

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without

---

[3] Because Plaintiff applied for disability before March 27, 2017, the regulations set forth in 20 C.F.R. § 416.927 apply to the ALJ's consideration of medical opinions.

"'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

        2.      *Rahul Khurana, M.D.; Christina Diamonti, Psy.D.; & David Mashburn, Ph.D.*

Drs. Khurana, Diamonti, and Mashburn performed psychological evaluations of Plaintiff and wrote opinions describing her symptoms and limitations. AR at 502-08, 639-49, 656-65, 986-92, 1098-1104. The ALJ gave little weight to all of these opinions, finding that they overly relied on Plaintiff's self-reporting, which was discounted for unchallenged reasons stated earlier in the decision. *Id*. at 695-96. The ALJ explicitly found that Plaintiff's reporting to these examiners was not accurate in at least some respects, thereby undermining the opinions rendered in reliance on this inaccurate information. *Id.*

Plaintiff argues that because the examiners conducted clinical examinations, there is nothing to suggest that they relied more heavily on Plaintiff's self-reporting than on their own observations. The Court disagrees. The examiners did not have access to any of Plaintiff's records, and quote extensively from her self-reporting throughout their opinions. *See, e.g.*, AR at 504-05, 642, 644-46, 656-58, 661-63, 986-87, 1098-99. Furthermore, the ALJ detailed inaccurate and inconsistent statements Plaintiff made to examining providers and others (*id*. at 691-92), and Plaintiff has not shown that these findings are erroneous. Under these circumstances, Plaintiff has not shown that the ALJ erred in discounting examiners' opinions due to their reliance on Plaintiff's unreliable self-report. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). Even

ORDER - 7

if, as Plaintiff argues, the ALJ's other lines of reasoning contain error, the Court finds that because the ALJ identified at least one specific and legitimate reason to discount the opinions of Drs. Khurana, Diamonti, and Mashburn, the Court will not disturb the ALJ's assessment of those opinions.

          3.     Kathleen Andersen, M.D.

Dr. Andersen examined Plaintiff in September 2012 and wrote a narrative opinion describing Plaintiff's symptoms and limitations. AR at 486-91. Her medical source statement reads as follows, in its entirety:

> [Plaintiff] appears to have some intellectual impairments which would influence the type of employment she would be eligible for. She did poorly on a number of items on cognitive testing today and has history of being in special education classes. She also reports significant problems with attention, concentration, and other problems suggesting a diagnosis of ADHD, inattentive type. She potentially could benefit from a trial of medication for this. Also, she reports high levels of ongoing anxiety. Her anxiety seems to center around a sense [of] personal vulnerability. She worries about her physical well-being and dying from some undetected medical condition. This worry apparently fairly frequently leads to panic attacks. Again, I would recommend intervening early, with a combination of cognitive behavioral therapy and medications. She is young, and it would be best for her future if this were brought under control sooner rather than later. She seems to be developing a somewhat avoidant behavior pattern, and again, it would be best to address this aggressively now. She seems to avoid social situations, does not have close friends, and avoids group situations. This could also be addressed with cognitive behavioral therapy. She potentially could benefit from assistance through DVR to help sort out what type of work she likely would be successful at, if any. A combination of anxiety, attentional issues, avoidant behavior, and cognitive limitations would make finding a niche for her in terms of work, challenging. She would likely have mild to moderate difficulty learning simple, straightforward tasks. She would likely have marked difficulty learning tasks of a more complex or abstract nature. She would likely need special assistance in learning tasks. She would have significant limitations in using problem solving thinking to address unforeseen situations and problems in a work environment. She is not unpleasant or inappropriate, but she appears shy and avoidant in interactions with others, and would likely feel quite anxious, at least initially in interactions with coworkers and supervisors. She describes herself as being somewhat "lazy" and having somewhat of an anger management issue. She reported that she was "smart" with a former employer, and some job counseling might be beneficial to address proper behavior in a work setting. In any case, her

      prognosis for transitioning smoothly to a work situation is fairly guarded, but would be optimized with treatment as described above. She does not appear to be capable of managing her own funds.

*Id*. at 490-91. The ALJ gave "little to no weight" to Dr. Andersen's opinion because her opinion was based on Plaintiff's self-report rather than objective testing, and because her medical source statement was not stated in functional terms. *Id*. at 696.

The ALJ did not err in discounting Dr. Andersen's opinion. There a few functional limitations embedded in Dr. Andersen's medical source statement (addressing Plaintiff's ability to perform simple work, learn new tasks, and use workplace judgment), and the ALJ's RFC assessment is consistent with those. *See* AR at 688. But the majority of the medical source statement describes Plaintiff's presentation, self-report, or treatment options without reference to her functional workplace limitations, and the ALJ did not err in discounting the opinion on that basis. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("Here, the ALJ found that Dr. Zipperman's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC.").

Accordingly, the Court finds no harmful legal error in the ALJ's assessment of Dr. Andersen's opinion.

        4.     *Christina Giedt, M.D.*

Dr. Giedt, Plaintiff's treating physician, wrote a number of opinions describing Plaintiff's symptoms and limitations. *See* AR at 983-85, 1109-14. The ALJ gave little weight to Dr. Giedt's opinions, finding them to be unexplained, failing to identify functional workplace limitations, and/or inconsistent with the record. *Id*. at 697.

The ALJ reasonably found Dr. Giedt's checkbox opinions to be unexplained, and many

ORDER - 9

of the sections were left blank. *See* AR at 983-85, 1110-14. This is an appropriate basis on which to discount these opinions. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

The ALJ also reasonably found that Dr. Giedt's narrative letter does not describe any particular functional limitations, and instead uses "vague undefined terms" that are not relevant to assessing RFC. *See* AR at 697, 1109. This is an appropriate basis on which to discount this opinion. *See Ford*, 950 F.3d at 1156.

Accordingly, the Court finds no harmful legal error in the ALJ's assessment of Dr. Giedt's opinions.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall either fully credit Dr. Fantoni-Salvador's opinion in accordance with the prior court remand order and find Plaintiff disabled, or shall provide legally sufficient reasons supported by substantial evidence to discount the opinion.

Dated this 26th day of April, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge